## Bass v. Hieatt Brothers.

(Decided June 22, 1926.)

### Appeal from Jefferson Circuit Court.

Reformation of Instruments—Evidence of Alleged Mutual Mistake in Extending Contract for Exclusive Agency to Three Months Instead of 30 Days Held Insufficient to Warrant Reformation.—Evidence of alleged mutual mistake in extending contract granting exclusive agency to sell property for three months instead of 30 days, as noted in pencil at end of contract, claimed by agent to refer to notice required for withdrawal of property by owner, held insufficient to warrant reformation of contract.

LEO J. SANDMAN for appellant.

JOSEPH J. HANCOCK for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Affirming.

Appellees, Hieatt Brothers, real estate brokers, in-
stituted this action against appellant, A. Bass, on a writ-
ten contract to recover $680.00, commission, for effecting
the sale of certain real estate owned by him. By answer
appellant sought to have the contract sued on reformed
upon the ground that by mutual mistake of the parties
the contract made it to appear that he had granted to
them the exclusive privilege of selling the property in
question for a period of three months when the real con-
tract between them was that appellees should have that
privilege for only thirty days; and that the property in
question had been sold by other real estate dealers after
its expiration. The action was transferred to equity for
a trial of the equitable issue so presented. The chancel-
lor found and adjudged that appellant was not entitled to
the reformation sought, and, that being appellant's sole
defense, judgment for the full amount sued for was
entered against him. The appeal is prosecuted from that
judgment, and the sole question presented is whether or
not the chancellor erred in adjudging that appellant was
not entitled to the reformation of the contract sued on.

The contract which both parties signed granted to
appellees "the exclusive right for three months from date
hereof to sell" the property described, and further pro-
vided that, if it should be sold within three months after
its expiration to any person with whom appellees had had
negotiations, appellant would pay the commission. Below
the place on the contract where the parties signed their
names there was written with lead pencil the figures and
words "thirty days," and the representative of appellees
testified that he wrote them on it. The testimony on the
question of reformation or no reformation centered
largely around that endorsement. Appellant testified for
himself and stated that it was placed on the written con-
tract to evidence the fact that the exclusive right to sell
the property in question was granted to appellee for a
period of only thirty days. No other witness testified
for him on the question. The representative of appel-
lees who acted for them in this transaction stated that
the endorsement was placed on the contract the next day
after it was signed and pursuant to a subsequent agree-
ment made between them by which appellees agreed that

if appellant desired to withdraw this property from them even before the expiration of the contract that he might do so upon giving thirty days' notice. Appellant produced no testimony tending to establish that by mutual mistake of the parties the contract which they signed granted to appellees the exclusive right for three months to sell this property. His testimony as to the endorsement "thirty days" placed at the bottom of the contract by appellees and as to appellees' explanation at the time that the endorsement changed the terms of the contract, which in plain language granted the three months' exclusive privilege, so that by the addition of the endorsement the contract instead of granting ninety days was merely for thirty days, would tend to establish fraud upon the part of appellees in procuring the contract, and that three months' instead of thirty days' exclusive privilege was granted by the contract by the fraud of appellees. However, appellant did not by his answer and counterclaim herein rely upon fraud but merely upon the mutual mistake of the parties. Our reading of the testimony convinces us that that for appellees is much more reasonable as to how the endorsement "thirty days" came to be placed at the foot of the contract. Appellant is shown to be a business man and to have bought and sold a considerable amount of real estate in the last several years, and it is certainly more reasonable to believe that, if the parties had intended to change the terms of the written contract so as to reduce the term for which the exclusive privilege was granted from three months, as plainly written in the body of the contract, to thirty days, as appellant insists the contract was, that would have been done by striking the words "three months" from the body of the contract and substituting in lieu thereof the words "thirty days." Appellant alone testified for himself, and a single witness testified for appellees. Reason and common business sense support the testimony for appellees that the contract as signed by the parties was that made by them, and tend to discredit appellant's theory that by mutual mistake the contract granted the exclusive privilege for three months instead of thirty days, as he contends the contract was. The proof falls far short of being clear and convincing required by the rule to which we have uniformly adhered before a court of equity is authorized to reform a written contract. The testimony on the question does not estab-

lish that the chancellor erred but rather establishes that
he properly concluded that no case was made for appel-
lant authorizing a reformation of the contract sued on.

The judgment, therefore, will be affirmed.

Judgment affirmed.